<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
BENJAMIN NUDGE,               :
                             :     Civil Action No. 03-4064 (WHW)
              Petitioner,     :
                             :
         v.                   :     OPINION
                             :
LYDELL SHERRER, et al.,       :
                             :
              Respondents.    :
```

**APPEARANCES:**

> BENJAMIN NUDGE, Petitioner <u>pro se</u>
> Northern State Prison
> #204039/SBI#431169A
> 168 Frontage Road
> Newark, New Jersey 07114

> CHRISTOPHER C. JOSEPHSON, ESQ.
> OFFICE OF NEW JERSEY ATTORNEY GENERAL
> Division of Law
> Richard J. Hughes Justice Complex
> 25 Market Street, P.O. Box 112
> Trenton, New Jersey 08625-0112
> Attorneys for Respondents

**WALLS**, District Judge

Petitioner Benjamin Nudge, a prisoner currently confined at Northern State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The named respondents are Lydell Sherrer, Administrator at Northern State Prison; the New Jersey State Parole Board ("the Parole Board"); and Peter Harvey, the Attorney General of New Jersey.

# I.   BACKGROUND

## A.   Criminal History

In 1978, Benjamin Nudge ("Nudge") was convicted of rape, forcible breaking and entering, and weapons charges.[1] He was sentenced to an aggregate indeterminate prison term of thirty years. In 1985, while on parole, Nudge was convicted of robbery, armed burglary, criminal restraint, and aggravated assault.[2] He was sentenced to an aggregate term of ten years in prison with a mandatory five year parole disqualifier. In 1987, Nudge was convicted of possessing burglar tools. He was sentenced to a term of one year. The following year, in 1988, Nudge was convicted of criminal restraint and sentenced to five years in prison.

Finally, on August 26, 1997, Nudge was arrested and charged with aggravated assault, terroristic threats, and weapons charges. He was not convicted of these charges, but Nudge

---

[1] These convictions involved the rape of a thirteen year old child, who Nudge forcibly removed from the home.

[2] These crimes occurred at the Ceasars Hotel and Casino in Atlantic City. The police had responded to a call at the hotel. When they arrived, they found a white, semi-nude female who was hysterical, and had scratches and red marks on her upper body. Nudge was found semi-nude in one of the hotel rooms. Nudge and the woman had allegedly agreed to return to the hotel room for a price, but she balked when she saw that he had handcuffs. The woman claimed that Nudge hit her, pulled her hair and choked her. The police investigation revealed that Nudge fit the description of an offender in several past aggravated assaults with handcuffs. Nudge had in his possession room keys to various hotels and motels where these assaults had occurred.

admitted in an interview with a state psychologist that he had met the woman in a club and was driving her home when she "freaked out" and accused him of assaulting her.

Nudge also has five prior juvenile convictions and seven prior adult convictions.  He received one juvenile probation, which was continued on two occasions, and one juvenile parole. Nudge also was paroled three times with respect to his adult convictions, and each time he violated his parole.

B.   Confidential Psychological Evaluations

In March 1996, a psychological evaluation of Nudge opined that he had poor judgment control and only fair impulse control and institutional adjustment.  The psychologist found little progress and rehabilitative effort by Nudge and recommended against parole.

In May 1996, an in-depth psychological evaluation was performed.  The psychologist noted that Nudge continues to deny his guilt for his convicted crimes, and complains that he has been victimized.  The psychologist further observed that all of Nudges' crimes were against female victims, although he was not classified as a repetitive compulsive sex offender.  The report concluded that Nudge should receive intensive mental health counseling for adjustment to community living.

In June 1998, another psychological evaluation showed that Nudge had poor judgment and insight, fair impulse control, and

only fair institutional adjustment and programming.  The psychologist found Nudge to be highly manipulative and sociopathic in making light of his criminal history.

In February 1999, the Parole Board requested a psychological evaluation on Nudge with regard to the likelihood of recidivism, his general personality profile, and the presence or absence of severe psychological problems, etc.  The psychologist noted that Nudge was recently returned to prison on a parole violation involving the physical assault of a woman.  Nudge claimed that the charge was the result of mistaken identity.  Using several assessment tools, the psychologist concluded that Nudge showed compulsiveness, a strong underlying antisocial orientation, and poor impulse control.  Nudge also exhibited little empathy and poor psychological insight.  The psychologist classified Nudge as a moderate to high risk for continued acting out behavior.

In October 1999, another psychological evaluation was performed on Nudge per request of the Parole Board.  Nudge denied his guilt for the crimes he committed and for his parole violations.  He expressed distrust of women, and became defensive and argumentative during testing.  The psychologist found Nudge's symptoms and test results to be consistent with a diagnosis of psychopathy, and concluded that Nudge was a high risk to commit future sex offenses.

In January 2001, the Parole Board again requested a psychological evaluation of Nudge. Nudge reiterated denial of his crimes, except as to the rape of the 13 year old victim. He stated to the psychologist that he was not aware of the victim's age, and when he found out he stopped, but she encouraged him. The psychologist found Nudge did not accept responsibility for his crimes and showed no remorse, concern, or contrition for his victims. The report further stated that, based on Nudge's past criminal record, Nudge failed to learn from his experiences, showed a total lack of remorse, and exhibited a psychopathic personality profile. The report concluded that Nudge was a high risk for future violent sexual acing out towards women.

C. Parole Board Decisions

On September 4, 1997, after Nudge's August 26, 1997 arrest for aggravated assault, terroristic threats, and weapons offenses, for which Nudge was not convicted, the Parole Board issued a warrant for Nudge's arrest on charges of parole violations. These violations included charges of failure to adhere to curfew and failure to refrain from alcohol use. Nudge's parole was revoked on December 24, 1997, and a 12 month parole eligibility term was imposed. Nudge did not administratively appeal this parole revocation decision, but it appears that he might have sought reconsideration of the parole revocation, which was eventually denied by a Parole Board panel

on December 16, 1998.  (RA25).[3]  However, it is clear that Nudge never filed an appeal to the New Jersey Appellate Division that expressly challenged the 1997 parole revocation decision before he brought this federal habeas petition.

After revocation of parole in 1997, Nudge's first parole eligibility hearing was held on August 25, 1999.  A two-member panel of the Parole Board denied Nudge's parole and imposed a 32-month future eligibility term ("FET").[4]  On February 17, 2000, a hearing officer referred Nudge to a two-member panel for review and deferred for further information.  On August 1, 2000, the two-member panel approved Nudge for parole pending his acceptance to an alternative sanction program ("ISSP").  On October 10, 2000, upon learning of Nudge's scheduled parole release, a psychologist issued an addendum to Nudge's risk assessment sheet and sent it to the Department of Corrections ("DOC").  On October 23, 2000, William F. Plantier, DOC Director of the Release Notification Unit, wrote to the Parole Board expressing concern against Nudge's release on parole.  As a result, an administrative hold was placed on Nudge's parole release.  The Parole Board notified Nudge on October 30, 2000 that his release on parole was placed on administrative hold because a parole plan

---

[3]  "RA" refers to the respondents' appendix, submitted to the Court with their answer.

[4]  This decision was affirmed by the Parole Board Panel on March 22, 2000.

had not been approved.  Nudge wrote to the Parole Board on November 3, 2000, informing the Board that a parole plan for placement had been approved subject to an ISSP recommendation.

Thereafter, on January 8, 2001, the Parole Board reconsidered and vacated its decision to release Nudge on parole. The Board denied parole and imposed a 28-month FET.  This decision was affirmed by the Board Panel on March 21, 2001. Nudge appealed the decision directly to the Appellate Division, and on November 1, 2001, the Appellate Division remanded the matter to the Parole Board based on Nudge's failure to exhaust his administrative remedies.

In the interim before the remand, Nudge appeared before a hearing officer on August 9, 2001, and a case summary reiterating Nudge's criminal offense, probation, and parole history was prepared and reviewed.  The hearing officer referred the case to the Board Panel partly because Nudge had not completed recommended sex offender counseling.

On October 26, 2001, a two-member panel of the Parole Board conducted a hearing and denied Nudge parole.  A 23-month FET was imposed.  The panel based its decision on Nudge's unfavorable panel interview which showed his lack of insight into his criminal behavior, the denial of crime, and his minimizing of criminal conduct.  The panel also relied upon the confidential psychological evaluations.  In mitigation, the panel did note

that Nudge had not incurred any prison infractions and had average to above average institutional reports.

On December 19, 2001, Nudge was notified by the Parole Board as to the procedural history of his case, and the administrative appeal process. Nevertheless, Nudge filed a second direct appeal of the January 8, 2001 decision denying parole, which the Appellate Division dismissed and remanded for administrative review on March 27, 2002. Nudge also filed an administrative appeal to the full Parole Board from the panel's October 26, 2001 decision denying parole.

On April 2, 2002, the full Parole Board affirmed the panel's decision denying parole and imposing a 23-month FET. This decision was based on Nudge's insufficient program participation with respect to sex offender issues, an unfavorable panel interview, and confidential psychological evaluations. Nudge appealed the final administrative decision to the Appellate Division. On March 19, 2003, the Appellate Division affirmed the Parole Board's decision. Nudge then filed a petition for certification to the New Jersey Supreme Court, in which he also, for the first time, challenged the 1997 parole revocation decision. The New Jersey Supreme Court denied certification on July 1, 2003.

Nudge filed this federal habeas petition on or about August 27, 2003. The State answered the petition on May 5, 2004. On

8

April 5, 2005, Nudge filed a motion for an evidentiary hearing.
He complains that, for 7½ years, he has not had an in-depth
evaluation; that there have been intentional delays on parole
hearings; and that his parole decisions are based on false
listings of new convictions.  He also filed a motion on June 16,
2005, seeking to supplement the record with a copy of the New
Jersey Appellate Division's decision, dated January 19, 2005,
affirming denial of parole; and the New Jersey Supreme Court
order denying certification on March 23, 2005.  This second
motion included copies of the recent state court decision and
order.  The respondents oppose both motions.

The Court grants Nudge's second motion seeking
supplementation of the record, only insofar as to deem the record
supplemented with regard to the January 19, 2005 Appellate
Division Opinion, and the New Jersey Supreme Court's March 23,
2005 Order denying certification.  Nudge apparently relies on
these state court decisions to refute the State's contention that
Nudge's challenge to the 1997 parole revocation decision is
unexhausted.

However, the motion for an evidentiary hearing will be
dismissed as moot because, as set forth below, the Court finds
Nudge's petition for habeas relief is unexhausted with respect to
his challenge to the 1997 parole revocation decision, and

9

alternatively, because the petition lacks substantive merit with
respect to Nudge's challenge to the 2002 denial of parole.

## II.   CLAIMS ASSERTED

In his petition, Nudge challenges the 1997 revocation of his
parole on several grounds, namely, that he was never convicted on
the August 1997 criminal charges, and that the technical parole
violations were based on a performance contract with curfew
provisions that had expired before the September 1997 warrant was
issued.   The respondents contend that these claims are
unexhausted.

## III.   FAILURE TO EXHAUST STATE COURT REMEDIES

A state prisoner applying for a writ of habeas corpus in
federal court must first "exhaust[] the remedies available in the
courts of the State," unless "there is an absence of available
State corrective process[] or ... circumstances exist that render
such process ineffective ... ."  28 U.S.C. § 2254(b)(1).   A
petitioner exhausts state remedies by presenting his federal
constitutional claims to each level of the state courts empowered
to hear those claims, either on direct appeal or in collateral
post-conviction proceedings.   See, e.g., O'Sullivan v. Boerckel,
526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to
fully exhaust their claims] to file petitions for discretionary
review when that review is part of the ordinary appellate review
procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513

10

(3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.  <u>Castille v. Peoples</u>, 489 U.S. 346, 350 (1989); <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  <u>Toulson v. Beyer</u>, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  <u>Picard</u>, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  <u>Id.</u> at 277.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims."  <u>Toulson</u>, 987 F.2d at 987.  In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused."

11

Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied,
484 U.S. 946 (1987).  However, discovery and an evidentiary
hearing should not be made available to a habeas petitioner who
claims relief from the exhaustion rule "unless the petitioner
sets forth facts with sufficient specificity that the district
court may be able, by examination of the allegations and the
response, if any, to determine if further proceedings are
appropriate."  Mayberry, 821 F.2d at 186.  "[T]he allegations of
exhaustion must be at least as specific with respect to the facts
allegedly excusing exhaustion as is required for allegations
alleging constitutional deprivation as the basis for the habeas
petition."  Id. at 187.

Here, the only claims alleged by Nudge concern his original
parole revocation on December 24, 1997.  The respondents contend
that Nudge never filed an administrative appeal from the parole
revocation decision to the full Parole Board, nor did he file an
appeal to the Appellate Division.  It appears from the record
that Nudge may have sought reconsideration of the 1997 revocation
decision sometime in 1998.  On December 16, 1998, the Chief of
the Parole Board's Appeals and Data Systems Unit wrote to Nudge's
attorney informing him that the matter was presented to the Board
Panel on December 16, 1998 and the panel affirmed their decision.
(RA25).  Nevertheless, it is clear from the record that Nudge did
not raise any challenge to the December 1997 parole revocation in

12

the state courts until he filed a petition for certification to the New Jersey Supreme Court in 2003.  The petition for certification was filed after March 19, 2003, when the Appellate Division affirmed the Parole Board's April 2002 decision denying parole.  The New Jersey Supreme Court summarily denied the petition without opinion.

The respondents further note that the Parole Board's April 2002 decision stated that Nudge had failed to file a timely appeal of the December 24, 1997 parole revocation.  (RA65-68). The Board contended that its refusal to consider Nudge's untimely appeal of the 1997 parole revocation in 2002 was correct under N.J.A.C. 10A:71-4.3.c, which requires that an appeal of a Board action must be received by the Board within 180 days of the revocation decision.  Thus, the Board stated that the allegations Nudge raised with respect to the December 24, 1997 parole revocation would not be examined by the Parole Board.  However, the Parole Board affirmed the panel's October 26, 2001 decision denying parole and imposing a 23-month FET.  The Board further stated that petitioner had now exhausted his administrative remedies with respect to the Board Panel's October 26, 2001 decision.  (RA65-68).  Nudge filed an appeal to the Appellate Division, which affirmed the denial of parole by decision dated March 19, 2003.  (RA81-93).  Nudge's appeal did not raise the

13

claims asserted here as to the December 1997 parole revocation in his state court appeal.[5]

Thus, it is clear from the record that Nudge had failed to exhaust his state court remedies with respect to the December 24, 1997 parole revocation decision before he filed his federal habeas petition on or about August 28, 2003.

After Nudge filed this habeas action, another parole hearing was conducted by a two-member panel on December 23, 2003. The panel again denied parole and imposed a 23-month FET based on Nudge's prior "extensive" and "repetitive" criminal record, his prior failed opportunities at community supervision, and his earlier attempt at community supervision that was revoked because of a new offense. (Appellate Division Opinion, decided January 19, 2005). Nudge administratively appealed the decision to the full Parole Board, which affirmed on April 14, 2004 for substantially similar reasons. Nudge then appealed to the Appellate Division, in which he challenged the 1997 parole revocation decision because it was purportedly based on an

---

[5] At most, the Appellate Division discussed the FET issue as it related to the December 1997 revocation of parole decision. The court commented that the maximum FET that may be imposed in a parole revocation based on other than the commission of a crime is twelve months. N.J.S.A. 30:4-123.64(b). The FET imposed on December 24, 1997 was twelve months in conformance with the statute. However, the subsequent denials of parole with FETs over twelve months were not subject to the statutory limitation because they were not parole revocation decisions. See N.J.S.A. 30:4-123.56. (RA93).

expired contract of special conditions concerning alcohol use and curfew. The Appellate Division found that petitioner's arguments did not merit discussion in a written opinion, and affirmed substantially for the reasons set forth by the Parole Board in its April 14, 2004 decision. Nudge then filed a petition for certification to the New Jersey Supreme Court, which was denied on March 23, 2005 without opinion.

This Court agrees with respondents' argument that this recent appeal pertains to a 2004 Parole Board decision denying parole and imposing a 23-month FET. Although Nudge raised arguments in his appeal regarding the 1997 revocation, the state courts did not consider the appeal as anything but a challenge to the 2004 denial of parole. The state courts affirmed the Parole Board without discussion. Thus, the Court finds that this matter is unexhausted because there has been no state court review of the claims raised by Nudge in this petition with respect to the 1997 parole revocation.

State law provides administrative and judicial review processes applicable to Nudge's claims. New Jersey law provides an absolute right to appeal any action or decision of a State administrative agency to the Superior Court, Appellate Division, both under the State Constitution, N.J. Const. Art. VI, Sec. 5, para. 4; Trantino v. New Jersey State Parole Board, 166 N.J. 113, 172 (N.J.), modified on other grounds, 167 N.J. 619 (2001), and

15

under the New Jersey Court Rules, Pressler, Current New Jersey Court Rules, Rule 2:2-3(a)(2) (2001). This exclusive procedure encompasses appeals from "inaction as well as action of a State administrative agency." Trantino v. New Jersey State Parole Board, 296 N.J. Super. 437, 459-460 (App. Div. 1997), modified on other grounds and affirmed, 154 N.J. 19 (1998); Johnson v. State Parole Board, 131 N.J. Super. 513, 517-18 (App. Div. 1974), certif. denied, 67 N.J. 94 (1975). See also Petrucelli v. Department of Civil Service, 28 N.J. Super. 572, 575 (App. Div. 1953) ("The import of the rule embraces official administrative conduct of a negative character as well, such as, for example, the refusal to consider a meritorious petition, or to conduct a hearing, or to render any decision in a controversial cause appropriately before the [agency].").

Here, Nudge has failed to pursue the remedies available to him under New Jersey law, namely, Nudge has not pursued any avenue of state court review of the 1997 parole revocation decision. He has only sought state court review of the Parole Board's decisions denying parole in 2002 and in 2004. None of these state court decisions discussed Nudge's challenge to the 1997 parole revocation, nor did they find that Nudge's claims, if construed as a challenge to the 1997 parole revocation, were procedurally barred.

16

As a matter of comity, it is best left to the New Jersey courts to determine if they can still entertain Nudge's unexhausted claims.  District courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies").  Because no state court has actually concluded that Nudge is procedurally barred from raising his unexhausted claims[6], and because neither party has pointed to any New Jersey law that does not clearly require a finding of default, this Court is not prepared to presume that Nudge's claims would be barred.  Accordingly, the Petition must be dismissed without prejudice for failure to exhaust state court remedies.

---

[6]  Only a state agency, the Parole Board, has concluded that Nudge's challenge to the 1997 revocation decision was untimely and would not be examined by the Board.  There has been no state court review on Nudge's challenge to the 1997 parole revocation, let alone a state court determination that such a claim is procedurally barred.

17

IV.  MERITS ANALYSIS

Finally, to the extent that Nudge is challenging the 2002 denial of parole and extended FET, his claim is without substantive merit.[7]

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light

---

[7]  The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Nudge is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  Williams, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  Id.  Under the
"unreasonable application" clause, a federal court may grant the
writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of [the petitioner's] case."
Id. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  Id. at 411.  See also
Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied,
532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171

19

F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v.
Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  See Werts, 228 F.3d at 196-97;
Matteo, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  Id.  AEDPA prohibits such de novo review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable.  Id.  In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court

20

precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d
Cir. 2005).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538
U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237
(2000)).  With respect to claims presented to, but unadjudicated
by, the state courts, however, a federal court may exercise pre-
AEDPA independent judgment.  See Hameen v. State of Delaware, 212
F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001);
Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See
also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002)
(Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption
of correctness to factual determinations made by the state
court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit
has ruled that this presumption of correctness based upon state
court factual findings can only be overcome by clear and
convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28
U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must
clear a high hurdle before a federal court will set aside any of
the state court's factual findings."  Mastracchio v. Vose, 274
F.3d 590, 597-98 (1st Cir. 2001).

Thus, in a § 2254 proceeding, state-court determinations of factual issues shall be presumed to be correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  See also Meyers v. Gillis, 93 F.3d 1147, 1149 n.1 (3d Cir. 1996).  In addition, district courts are not to "second-guess parole boards" on federal habeas review, and the requirements of substantive due process are satisfied if there is some basis for the challenged decision.  Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002); Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001).  Furthermore, "[t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times "conscience shocking" or "deliberately indifferent".  Hunterson, 308 F.3d at 246-47.

Here, in affirming the Parole Board's April 2, 2002 denial of parole and extended FET, the New Jersey Appellate Division concluded that the numerous unfavorable psychological evaluations of Nudge, his unfavorable panel interviews, and his extensive criminal record, served to establish that there was a substantial likelihood that Nudge would commit another crime if paroled.  Accordingly, the Appellate Division affirmed substantially for the reasons set forth by the Parole Board.

22

This Court finds that Nudge has failed to present evidence to rebut the factual determinations of the Appellate Division or to suggest that the Parole Board or Appellate Division applied an incorrect standard in determining his eligibility for parole. The decision of the Appellate Division is not contrary to, and does not involve an unreasonable application of, clearly established federal or state law, nor is it based on an unreasonable determination of the facts. Accordingly, to the extent that the petition should be construed as a challenge to his denial of parole in 2002, the petition will be dismissed for lack of merit.

IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

23

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, to the extent that the Petition challenges the 1997 parole revocation decision, said claims will be dismissed without prejudice for non-exhaustion of state court remedies.  However, to the extent that the Petition is challenging the 2002 denial of parole decision, such claims will be dismissed with prejudice as meritless.  Petitioner's motion for an evidentiary hearing (Docket Entry No. 16) is dismissed as moot; and the motion to supplement the record (Docket Entry No. 19) is granted only to the limited extent that the Court will consider the documentary record as attached to Petitioner's motion.  An appropriate order follows.

WILLIAM H. WALLS
United States District Judge

Dated:

24